The **PEOPLES NATIONAL BANK,** Clay Center, Kansas, Plaintiff,

v.

**PURINA MILLS, INC.,** Defendant.

No. 95–4077–SAC.

United States District Court, D. Kansas.

Nov. 1, 1996.

Gary H. Hanson, Stumbo, Hanson & Hendricks, Topeka, KS, Tim W. Ryan, Ryan, Condray & Ryan, LLC, Clay Center, KS, for plaintiff.

Kathryn Gardner, Terry L. Malone, Richard K. Thompson, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiff's motion for clarification or, in the alternative, reconsideration of the memorandum and order dated June 20, 1996. (Dk. 51). According to the plaintiff Peoples National Bank, Clay Center, Kansas ("Bank"), it and the defendant Purina Mills, Inc. ("Purina") disagree over whether the court's prior order requires the plaintiff to "apply a prorated share (41.7%) of *all* collateral proceeds solely to Purina's $150,000.00 liability under the [Non–Funded Participation Agreement] NFPA or whether the Bank may apply the proceeds pro rata to all loans held by the Bank, including loans subject to the NFPA." (Dk. 51 at 1). The Bank interprets the court's order as requiring a reallocation of collateral proceeds that still gives the Bank a pro rata share based on both the NFPA and non-NFPA loans. In contrast, Purina interprets the court's order as giving it a 41.7%

share in all collateral proceeds without regard to the manner in which the Bank's share is calculated.

## STANDARDS GOVERNING MOTION TO RECONSIDER

■ An appellate court uses an abuse of discretion standard to review a district court's refusal to grant relief on a motion to reconsider. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir. 1988). "A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D.Kan. Rule 7.3; *see Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990). Absent extraordinary circumstances, "revisiting the issues already addressed 'is not the purpose of a motion to reconsider.'" *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). "A motion for reconsideration is not to be used as a vehicle for the losing party to rehash arguments previously considered and rejected." *Torre v. Federated Mutual Insurance Co.,* 906 F.Supp. 616, 618 (D.Kan.1995). A party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider. *Renfro v. City of Emporia,* 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991), *cert. dismissed,* 503 U.S. 915, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). A motion to reconsider advanced for improper purposes "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Administration Committee,* 121 F.R.D. 69, 71 (N.D.Ill.1988).

## ANALYSIS

The court does not believe its prior order is ambiguous with respect to the issue argued by the plaintiff. *See Peoples Nat. Bank v. Purina Mills,* 931 F.Supp. 1525, 1532 (D.Kan.1996). Nonetheless, the court will highlight its relevant holdings and explain those areas where the plaintiff appears to be confused.

■ The Bank originally argued that it had the common-law right to apply the proceeds from the collateral first to the non-NFPA term note even though the collateral secured both the NFPA loans and the non-NFPA term note. The court found the general rule to be that a creditor enjoyed such a right only "'in the absence of contrary agreement.'" 931 F.Supp. at 1532 (citation omitted). By the terms of the NFPA, the Bank had "expressly agreed that '[a]ny payments received ... by liquidation of collateral, ..., shall be applied to pro rata among the indebtedness held by Bank and the indebtedness held by Purina.'" 931 F.Supp. at 1532–33. This agreement over the application of collateral proceeds necessarily precludes the Bank from claiming the discretionary right to apply the collateral proceeds as it sees fit. *Id.* at 1533. Having lost on that argument, the Bank now retreats to a middle ground.

■ The Bank presently argues the court has held or should hold that the collateral proceeds are to be shared ratably and that the Bank's pro rata share is based on the total indebtedness (NFPA and non-NFPA loans) it held in November of 1994. To support its argument, the Bank highlights certain findings from the court's order. The NFPA incorporates the security agreement, and the latter document includes a cross-collateralization provision applicable to all of the Tolls' debt held by the Bank. Purina knew of the non-NFPA loan. According to the Bank, "[i]n light of these facts, the court concluded the NFPA 'expressly gives Purina an interest in all listed collateral that is concurrent with the Bank's claimed interest in the same collateral.' (Memorandum, p. 14)." (Dk. 52, at 2). Besides the court's order, the Bank contends a contrary holding would mean the cross-collateralization clause of the security agreement was of no effect and the non-NFPA note was subordinate to the NFPA loans.[1]

---

1. In an affidavit from the Bank's vice-president, R. Kent Anderson, the Bank offers the following calculations pursuant to this interpretation. As of November of 1994, the Tolls' total indebtedness to the Bank was $483,0778 ($360,000 or 74.52% in NFPA notes and $123,078 or 25.48% in a non-NFPA note). The total collateral proceeds were $494,613 ($282,386 from the hog

Once again, the Bank's arguments falter under the weight of the NFPA's own plain terms. In relevant part, the NFPA provides:

In the event of default under the Loan Documents and should the obligations under the Loan Document be accelerated as provided in paragraph 8 hereof, *the interests of Bank and Purina in the Loan and any collateral therefor shall be deemed ratably concurrent. Any payments received thereafter* from the Borrower or any other parties to the Loan Documents or *by liquidation of collateral,* application of deposits, or otherwise, *shall be applied to pro rata among the indebtedness held by Bank and the indebtedness held by Purina. If any party hereto received payment on the Loan in greater proportion than payments received by the other party hereto on the basis of the percentage of participation on the date the obligations were accelerated,* whether the same are voluntary, involuntary, by operation of law, by application of collateral security of any kind or recovery from any guarantor, surety or the like, or by any other means, *the parties receiving such greater proportion shall pay to each of the other parties such sums, or shall purchase from each of them such participations in the Loan as shall be necessary to cause the party receiving such greater proportion to share the excess payment ratably with each of the other parties* hereto in accordance with their percentage or participation hereunder.

In one of its "whereas" clauses, the NFPA defines "the Loan" as the $360,000 extension of credit. "The NFPA does not mention any loans other than the $360,000." 931 F.Supp. at 1532. Consequently, the term, "loan," and

its synonym, "indebtedness," must be construed as referring exclusively to the original $360,000 extension of credit.

As stated in its prior order, "[s]ince the NFPA does not refer to any other agreement or loans in which the Bank may claim an interest, superior or not, to the same collateral, the court finds that the precise terms of the NFPA, strictly construed in consonance with their plain and ordinary meanings, expressly gives Purina an interest in all listed collateral that is concurrent with the Bank's claimed interest in the same collateral." 931 F.Supp. at 1532. As of November of 1994, the Bank's participation interest in the NFPA loans was 58.3%. The NFPA requires the Bank to share proportionally all collateral proceeds with Purina based on their respective participation interests under the NFPA. "Purina is entitled to share pro rata (41.7%) in all collateral proceeds, including those that the Bank previously applied to the term promissory note not covered by the NFPA." 931 F.Supp. at 1533.

The court fully understands this result means that the Bank's non-NFPA note is subordinate to the NFPA loans and that the Bank's reasons for the cross-collateralization in the security agreement are frustrated. Even so, the court is compelled to enforce the NFPA on its plain and unambiguous terms. The Bank offers the court no tenable argument for reading the Bank's non-NFPA indebtedness into any of the terms of the NFPA. The security agreement simply contemplates other indebtedness held by the Bank. The security agreement does not purport to modify the plain and ordinary meaning of any of the NFPA's express terms.

While its ruling does not resolve all the issues,[2] the court believes it does provide a

liquidation plus $212,227 from the sale of the loans). The Bank says it advanced $136,933 to finish and liquidate the hogs. The Bank deducts the advances ($136,933) from the total collateral proceeds ($494,613) and then calculates that 74.52% of those proceeds ($266,543.13) are applicable to the NFPA notes. This means that the unpaid balance on the NFPA loans is approximately $93,456.88 and that Purina's pro rata share of that amount is $38,971.51 (41.7% of $93,456.88).

**2.** Using the numbers tendered in Anderson's affidavit, the court understands the respective posi-

tions to be as follows. The collateral proceeds totalled $494,613 ($282,386 from the hog liquidation plus $212,227 from the sale of the loans). The Bank says it advanced $136,933 to finish and liquidate the hogs. Purina argues that the records indicate that the advances made on the NFPA loans to finish the hogs totalled $59,-848.73. In its prior order, the court found it was uncontroverted that Purina had agreed to advances for finishing the hogs to market weight. 931 F.Supp. at 1530. The NFPA provides that: "Bank and Purina will also share ratably in any cost or expenditure determined necessary by

framework for meaningful settlement discussions. In the event of a settlement, the parties shall inform the court immediately. If the parties have not reached a settlement within thirty days of this order, they shall contact the court, and the case shall proceed towards trial.

IT IS THEREFORE ORDERED that the plaintiff Bank's motion for clarification and/or reconsideration (Dk. 51) is denied.

Bank and Purina jointly to maintain and preserve their position as regards the Loan, including but not limited to cost and expenditures for the payment of taxes, insurance premiums, prevention of waste, repairs, maintenance, management fees and for collection and preservation of collateral including any reasonable attorney's fee and court costs." If the Bank's figure on advances is correct, then the unpaid balance on the NFPA loan is $2,320. Purina would be liable for 41.7% of this figure and, as provided in the NFPA, interest on that amount and its share of the "cost and expense of any ... efforts, actions or proceedings" to collect on the NFPA loans. On the other hand, if Purina's figure on advances is correct, then there would be no unpaid balance on the NFPA loans. Presumably, the excess proceeds would also cover Purina's pro rata share of the collection expenses.